Adam H. Braun, Esq. [CASBN 199544]
BRAUN & BRAUN LLP
10880 Wilshire Boulevard, Suite 1020
Los Angeles, California 90024
Telephone: (310) 277-4777
Facsimile: (310) 507-0232
Email: adam@braunlaw.com

Igor S. Drabkin [CASBN 199013]
HOLTZ, SLAVETT & DRABKIN, APLC
315 S. Beverly Drive, Suite 515
Beverly Hills, CA 90212
Telephone: (310) 550-6200
Facsimile: (310) 774-3904
Email: idrabkin@hsdtaxlaw.com

Attorneys for Defendant
JEAN-GUY MINN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>JEAN-GUY MINN,<br><br>Defendant. | Case No. SA CR 21-57-CJC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Sentencing Date: October 6, 2021<br>Sentencing Time: 11:00 a.m. |

    Defendant Jean-Guy Minn ("Defendant Minn"), by and through his counsel of record, hereby submits the following sentencing memorandum.

    Defendant Minn concurs in the guideline calculations contained in the Presentencing Report ("PSR") [Doc. 27].

Defendant also agrees with the additional four-level variance requested by the Government in its Sentencing Memorandum [Doc. 23] in recognition of Defendant Minn's immediate confession to the IRS and his cooperation in disclosing tax years and bank accounts about which the IRS was not aware.

After the four-level variance requested by the Government which brings his offense level to 13, Minn's advisory guideline range, the starting point for assessing an appropriate sentence, is 12 to 18 months.  The Probation Office also recommends a fine of $95,000.

As discussed in greater detail below, Defendant submits a sentence consisting of 12 months home confinement, three years of probation, a $95,000 criminal penalty and full restitution of approximately $573,916 in unpaid taxes is sufficient punishment in this case for among the following reasons:

- Defendant has lived in the United States on a green card for nearly 30 years and due to the present conviction, faces deportation and permanent separation from his home and his family.  This life-altering consequence is not faced by most similarly situated defendants.
- Defendant as part of his plea agreement agreed to pay very significant civil financial penalties likely amounting to approximately $10,000,000 *in addition to* the criminal restitution and criminal fine imposed in this case.
- As acknowledged by the Government in its Sentencing Memorandum and as discussed below, Defendant readily confessed when first approached by the IRS and as part of his contrition, identified for the Government tax years and bank accounts of which that the IRS was not aware.

<u>Personal and History</u>

Thirty-six years ago, Mr. Minn moved to the United States to attend graduate school and the United States has been his home ever since.  PSR at ¶ 55.  He got married to his wife Ari and they raised a son and daughter in the United States.

Minn's son is 27 years old and recently married.  His daughter is 25 years old.  He is close to both of his children.

### Retirement Post 9/11

Following graduate school in New York, Mr. Minn remained in New York for work holding positions with three different companies between 1988 and 2001. He left his position with the Korean firm LG Securities, in the 84th Floor of the North Tower of the World Trade Center, a few months before it was destroyed on 9/11. In fact, Minn had a meeting scheduled in the North Tower for later that morning of the attack. Minn lost that day friends (including a close friend Andrew), business school classmates, colleagues and co-workers. His experience was of course shared by others who worked at the World Trade Center complex or nearby. While Minn had left LG Securities to sort out his career path as he approached his 40s, the shock of that experience accelerated his desire to make significant life changes including a move to the West Coast and a premature retirement. After his move to California in 2002, Minn did occasional consulting work giving clients guidance using his knowledge of markets.

### Confession, Contrition and Voluntary Cooperation When Approached by IRS

Mr. Minn's remorse for his actions went beyond merely pleading guilty in this case. It was instantaneous and reflexive. When first approached by the IRS, he immediately confessed to his actions and provided truthful and comprehensive answers disclosing to agents his various bank accounts. From that point forward, he disclosed to the Government tax years and bank accounts unknown to the IRS and through counsel, gathered and produced bank records not readily available. His admissions and his disclosure of the full scope of the years and accounts involved are acknowledged by Government at pages 3 and 4 of its Sentencing Position. Mr. Minn also retained accounting professionals to assist him and the Government with reconstructing the correct income to declare and the taxes owed for each year in question. Finally, he also agreed to a very substantial civil financial penalty that will result in him paying an additional nearly $10,000,000 in civil penalties beyond his criminal sentence, fine and restitution for failing to pay $573,916 in taxes.

Similarly, Mr. Minn, with the assistance of his attorneys and accountants, prepared and provided to the prosecution drafts of his amended income tax returns for the tax years at issue. These draft returns were provided to and reviewed by the IRS Criminal Investigation (IRS-CI) section and used by the parties to determine the tax owed of $573,916.

Finally, on August 6, 2021, Mr. Minn filed returns correcting Tax Years 2010 through 2017 and along with those corrected returns, submitted cashier's checks paying in full the tax he owed of $573,916.

Aside from the Handling of His Taxes Between 2010 and 2017,

Minn Has Led a Life of Generosity and Humility

Along with this Sentencing Memorandum, we have submitted letters from those who know Defendant Minn best and those who are able to provide the Court with a broader picture of the way Mr. Minn chose to lead his life including his humility and his personal generosity. See Ex. 1. These family members and close friends also describe Minn's embarrassment and contrition.

As his wife Ari Minn notes,

"[Jean-Guy] was always very generous about helping people who were in need. Even though he was not a very religious person, he continuously donated much to our church because he believed that it does good for the world and the society we live in. He also believed in educating people so when I mentioned to him about the Compassion International, he gladly agreed to participate."

His sister-in-law, Elaine Kang, recalls in her letter how Mr. Minn as a newlywed allowed her to live with his new family for a year while she was first getting starting out as a young adult despite the fact that Minn and her sister were a newly married couple themselves trying to start a life of their own. She writes, "his priority is family. He always ensures that everyone is cared for, not in a boastful manner but quietly providing help where needed, even to his wife's family."

**4.**
**DEFENDANT'S SENTENCING MEMORANDUM**

His sister-in-law cites as another example how in more recent years he instinctively leapt in to help his wife's elderly parents when a serious medical issue arose:

"[Three] sisters, living in different parts of the world, were not immediately available when my father needed an urgent operation to remove his cancer in Korea. Jean-Guy was in Korea at the time, and he looked after both my elderly parents to his utmost best until my father successfully recovered from the operation."

His friend of more than 30 years, Jae H. Sang, also notes Minn's personal generosity:

"Jean Guy was there when I was going through my divorce. I consider him, his wife, his son and daughter, my extended family. Jean Guy has always devoted his life for the well-being of others and for those around him, which I have always witnessed from him."

Throughout these letters, family and friends consistently note Minn's personal humility.

Finally, all note for the Court how embarrassed and ashamed Minn was to admit his mistakes to his family and the contrition he has exhibited in very personal terms.

His wife recalls in her letter, "Most of all, [Minn] was very afraid to disappoint our son and daughter but built up enough courage to openly talk to them about the situation he is in. He told them that he had made a mistake and is willing to take all the consequences to correct it because that is the right thing to do."

His son Kyung-Bin Kevin Minn writes about the painful conversations Minn had with his own children and the fact that he even sought out and apologized directly to the family of his son's fiancée.   His son recalls:

"My father has made everyone around him very well aware of [what he did leading to this case] and has repented and sought forgiveness like I have never seen from him before. . . These charges were brought to our family's attention in the midst of my engagement to my now wife. The first thing he did was to apologize to our family, but the second thing he did was to apologize to my then fiancée's family, to assure them that this

is not the man he is, nor the man he raised me to be. He is far from a perfect man, but he is one that is very self-aware when he has done wrong, and desires to rectify his mistakes, not for his own benefit, but for the sake of those he loves and cares for."

<u>Immigration Consequences of Conviction – Deportation and Separation from Family</u>

Although the United States has been Mr. Minn's home the past 36 years and the place he has raised his family, the fact remains that he is only a lawful permanent resident (a Green Card holder) and is not a U.S. Citizen. As a result, his felony conviction in this case subjects him to deportation from the United States and separation from his wife and family. It is in many ways harsher punishment than a U.S. Citizen receiving a year in custody at a minimum-security prison because this consequence is permanent and life-altering not something that is over in a year.

<u>Recommended Sentence Constitutes Adequate Punishment and Adequate Deterrence</u>

To begin with, it is worth noting several sentencing concerns which are not present in this case. Mr. Minn is not a danger to the community. He is also unlikely to reoffend given his documented contrition.

Furthermore, given the consequences he faces – both the life-altering immigration consequences and the very stiff additional civil financial penalties of approximately $10,000,000, we submit a sentence of 12 months home confinement, three years of probation, restitution of $573,916 for unpaid taxes (which he paid last month), and a criminal fine of $95,000 is more than sufficient punishment to achieve the purposes of specific and general deterrence.

As detailed above, Mr. Minn is remorseful and immediately confessed and cooperated when approached by the IRS disclosing tax years and bank accounts unknown to the Government. His financial consequences are significant when comparing the approximately $10,000,000 in civil penalties he has agreed with the $573,916 in taxes owed. Finally, almost no person would wish deportation from their home of three decades and separation from their family in exchange for the chance to save several hundred

thousand in taxes.  As such, the requested sentence serves the purposes of general deterrence as well.

                                       Respectfully submitted,

                                       BRAUN & BRAUN LLP

Dated:  September 22, 2021          By: _____
                                       Adam H. Braun
                                       Attorneys for Defendant
                                       JEAN-GUY MINN